IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:11cr462 |
| v. ) | |
| ) | The Honorable Claude M. Hilton |
| TERRANCE KERNEY, ) | |
| ) | Motions Date: November 18, 2011 |
| Defendant. ) | |

GOVERNMENT'S CONSOLIDATED RESPONSE TO
DEFENDANT'S MOTIONS TO SUPPRESS

The United States of America, by Neil H. MacBride, United States Attorney, Marc J. Birnbaum, Special Assistant United States Attorney, and Jonathan Fahey, Assistant United States Attorney, hereby responds to the defendant's Motion to Suppress Tangible Evidence (Dkt. Nos. 35 and 36) and the defendant's Motion to Suppress Statements (Dkt. Nos. 38 and 39). Because the agents properly seized items within the scope of the search warrant or pursuant to the plain-view doctrine, the defendant's Motion to Suppress Tangible Evidence should be denied. Additionally, because the defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights, the defendant's Motion to Suppress Statements should also be denied.

I.     Introduction

On September 20, 2011, the defendant was indicted on four counts: (1) Conspiracy to Commit Robbery, in violation of 18 U.S.C. § 1951(a); (2) Conspiracy to Possess with Intent to Distribute Five Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a) and 846; (3) Possession of a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c); and (4) Possession of a Firearm by a Prohibited Person, in violation 18 U.S.C. § 922(g)(1).

These charges stem from a conspiracy between the defendant and Steve Donovan Dixon[1] to rob a cocaine "stash house."

II.  Background

In and around June 2011, the defendant and Dixon conspired to rob a cocaine "stash house" in Fairfax County, within the Eastern District of Virginia. As part of this conspiracy, the defendant shipped firearms and novelty police uniforms to Virginia for use in the robbery. The conspirators intended to disguise themselves as police officers in order to gain entry and subdue their intended victims. On or about July 18, 2011, the conspirators flew into the area for the specific purpose of committing the armed robbery. While in the area, the conspirators purchased additional items to be used in the robbery, including masks, the components to a "ram," tools and a bag of flex ties (sometimes used as improvised restraining devices). The conspirators also researched the possible robbery locations.

On the day of the planned robbery, the conspirators were arrested while they changed into their police clothing. Law enforcement officers seized items to be used in the robbery, including the "ram" and zip ties, from the conspirators. After the arrests, law enforcement officers searched the conspirators's hotel room pursuant to a search warrant and transported the defendant to a nearby police station where he was advised of his *Miranda* rights.

A.  Search

On July 21, 2011, the Honorable Theresa Carroll Buchanan, United States Magistrate Judge, issued a search warrant for the conspirators's hotel room. Search and Seizure Warrant, 1:11sw384. During the execution of the warrant later this same day, agents seized: (1) a receipt for the hotel room (July 18-21, 2011); (2) a paper compact disc cover with handwritten notes

---

[1] Mr. Dixon pleaded guilty to (1) Conspiracy to Commit Robbery, in violation of 18 U.S.C. § 1951(a); (2) Possession of a Firearm in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c); and (3) Possession of a Firearm by a Prohibited Person, in violation 18 U.S.C. § 922(g)(1) on September 19, 2011 in Case No. 1:11cr449.

2

regarding the Virginia Lodge (a potential "stash house" location); (3) a Home Depot receipt, dated July 20, 2011; (4) area maps; (5) flex cuffs; (6) various tools; (7) a plastic Kmart bag; and (8) a groin protection cup.

    B.    <u>Defendant's Statement</u>

In a Fairfax County Police Department interview room, ATF Special Agent Donald Dockendorff told the defendant that he would advise him of his *Miranda* rights. As an initial matter, the defendant acknowledged that he was already familiar with his *Miranda* rights.[2] Special Agent Dockendorff then read the following from the Federal Law Enforcement Training Center Legal Division Form SH-1220:

> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to consult with an attorney and to have them present during questioning.
>
> If you cannot afford an attorney, one will be appointed to represent you prior to any questioning.
>
> Do you understand your rights?
>
> Are you willing to waive these rights and talk to me?

After Special Agent Dockendorff read these warnings, the defendant stated, "I'll listen, and I'd like to ask a question or two. We can talk." The defendant and investigators proceeded to speak about the facts underlying his arrest. The defendant was lucid throughout the interview and responded appropriately during the discussion. The defendant did not ask to speak with a lawyer, nor did he ask that the interview be terminated. In fact, the defendant willingly spoke with the interviewing officers after he waived his rights.

---

[2] The defendant is experienced in the criminal justice system. He was previously convicted of robbery in the second degree in California, which resulted in a significant penitentiary sentence. The defendant has in excess of 10 prior arrests according to his criminal history.

3

III. <u>Argument</u>

    A. <u>The Search Warrant Specifically Authorized the Agents to Seize the Room Receipt, Paper Compact Disc Cover with Handwritten Notes Regarding a "Stash House" Location, Home Depot Receipt for Items Used to Construct a "Ram," and Area Maps.</u>

The defendant argues that a number of items seized during the search were outside the scope of the warrant, and must be suppressed. However, the defendant's Motion to Suppress Tangible Evidence does not indicate which items he believes are outside the scope of the warrant. Since all of the items were lawfully seized, the defendant's contention is without merit.[3]

The search warrant authorized the agents to search the hotel room and seize: "Any and all documentation relating to the planning of a robbery, 'stash house' locations, communication with the [undercover agents], purchase or construction of items to be used in the robbery." Search and Seizure Warrant, 1:11sw384 (Attachment B). The room receipt, paper compact disc cover with handwritten notes regarding a "stash house" location, Home Depot receipt for items used to construct a "ram," and area maps, all fall within this category.

Specifically, the room receipt is "documentation relating to the planning of the robbery," as it is evidence the defendant and his coconspirator traveled to the area in the days leading up to the robbery. The compact disc cover with handwritten notes of a "stash house" location is "documentation relating to the planning of the robbery, [and] 'stash house' locations." The Home Depot receipt for items used to construct a "ram" is "documentation relating to the planning of the robbery, [and] purchase or construction of items to be used in the robbery." Finally, the area maps are "documentation relating to the planning of the robbery, [and] 'stash house' locations," as it can be reasonably inferred, based on the conspirators's conversations that

---

[3] The government does not intend to introduce the groin cup protector during its case-in-chief.

they used the maps to travel to and scout out the "stash house" locations. For these reasons, the room receipt, paper compact disc cover with handwritten notes regarding a "stash house" location, Home Depot receipt for items used to construct a "ram," and area maps, should not be suppressed.

  B. <u>The Agents Seized the Flex Cuffs, Tools, and Kmart Bag Under the Plain-View Doctrine.</u>

The plain-view doctrine permitted seizure of the flex cuffs, Kmart bag, and various tools. "[T]he plain-view doctrine authorizes warrantless seizures of incriminating evidence when (1) the officer is lawfully in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997), *citing Horton v. California*, 496 U.S. 128, 136-37 (1990). In this case, since the agents were executing a valid search warrant at the hotel room, there can be no question that the agents were authorized to be inside the room and to search there for documents and electronic devices.

In determining whether the incriminating character of the seized item is "readily apparent," it is sufficient that "the agents collectively ha[ve] probable cause to believe the [item] was evidence of a crime at the time of the seizure." *United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996) (upholding seizure of firearm during authorized search in bank fraud investigation based on one agent's knowledge that subject was a convicted felon). Therefore, probable cause cannot be determined in a vacuum. Law enforcement officers may use their experience and knowledge to draw inferences of criminal activity from items that on their face are not criminal. *Wells*, 98 F.3d at 810.

At the time of the search, agents knew that the conspirators had constructed a "ram" for entry into the "stash house" location, and purchased masks to conceal their identities and flex

cuffs to restrain their victims. Specifically, on July 19, 2011, Dixon stated his desire to construct or obtain entry tools (a "ram") to gain access into the "stash house" location. On July 20, 2011, the defendant handed a UC a plastic hotel-style laundry bag which contained two black, paintball-type masks. The defendant stated he and Dixon purchased the masks the previous night and intended to use them in the commission of the robbery. Dixon stated "police actually use this" and the defendant stated that the UCs have only seen a portion of the equipment they intended to use during the robbery. Later that same day, the defendant and Dixon asked the UCs to drive them to Home Depot, where they purchased the components to what they described as a "ram," a bag of flex ties (improvised restraining devices), a screwdriver and a hammer. On July 21, 2011, the conspirators moved items, including the "ram," for use in the robbery. Agents also seized flex cuffs from the conspirators at the arrest scene. Taking all of this information together, the agents had probable cause to believe the items were evidence of a crime at the time of the seizure.

Even if this Court were to hold that seizure of any or all of these items was improper, photographs and testimony about these items would still be admissible at trial. As discussed above, the search warrant permitted the agents to be in position to photograph the room. *United States v. Espinoza*, 641 F.2d 153, 167 (4th Cir. 1981) (finding that where agent was lawfully on the premises in the execution of a valid search warrant, the agent "did not exceed the scope of the warrant by making the photographs of what he saw in plain view and to that extent 'seizing' those views themselves as evidence").

      C.    <u>The Defendant was Properly Advised of his *Miranda* Rights and Knowingly, Voluntarily, and Intelligently Waived Those Rights.</u>

The defendant contends that his statements must be suppressed, as he was not properly advised of his *Miranda* rights nor provided with a *Miranda* waiver form during his post-arrest

interview. This contention is without merit, as the defendant was properly advised of his *Miranda* rights, and knowingly, voluntarily, and intelligently waived those rights.

*Miranda* warnings are required when an individual is subject to custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). An individual may waive those rights, and submit to custodial interrogation, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 475. This inquiry has two distinct components:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986). The waiver need not be express, but may be implied from the defendant's actions and words in certain circumstances. *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *see also United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984), *United States v. Cardwell*, 433 F.3d 378, 389-90 (4th Cir. 2005), *Berghuis v. Thompkins*, ___ U.S. ___, 130 S.Ct. 2250, 2262 (2010) (holding that a "suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives the right to remain silent by making an uncoerced statement to the police").

In this case, the defendant was taken into custody, and transported to a nearby police station. The investigators met with the defendant shortly thereafter. Before the defendant was advised of his *Miranda* rights, he acknowledged that he was familiar with those rights. Nonetheless, an investigator thoroughly advised the defendant of his *Miranda* rights two minutes after entering the interview room. After being advised of his rights, the defendant spoke with the

law enforcement officers and fully comprehended the consequences of his decision to do so. The defendant was lucid throughout the interview and responded appropriately during the discussion. The defendant did not ask to speak with a lawyer, nor did he ask that the interview be terminated. The defendant was not threatened or coerced in any respect. Accordingly, the defendant's waiver of rights was voluntarily, knowingly, and intelligently made.

## Conclusion

For the above-stated reasons, the United States submits that the agents properly seized items within the scope of the search warrant or pursuant to the plain-view doctrine. Additionally, the United States submits that the investigators advised the defendant of his *Miranda* rights prior to interrogation, and that he waived those rights knowingly, voluntarily, and intelligently. Therefore, the motions to suppress should be denied.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:           /s/
Marc J. Birnbaum
Special Assistant United States Attorney
Jonathan Fahey
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia  22314
Phone:  (703) 299-3700
Fax:  (703) 299-3982
marc.birnbaum@usdoj.gov

Certificate of Service

I hereby certify that on the 14th of November, 2011, I electronically filed the foregoing Consolidated Response with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

John T. Spiggle, Esq.
The Spiggle Law Firm
4830B 31st., S
Arlington, Virginia 22206
(202) 449-8527

I also certify that on this same date, I sent a copy of this Consolidated Response to Matthew Kaiser, Esq., at mkaiser@thekaiserlawfirm.com.

By:         /s/
Marc J. Birnbaum
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3982
marc.birnbaum@usdoj.gov